FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: Mar 09 2023

KEVIN P. WEIMER , Clerk

By: B. Evans
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Information |
| v. | No. 1:23-CR-38 |
| JAMES HUGHES | |

THE UNITED STATES ATTORNEY CHARGES THAT:

**Count One – 18 U.S.C. § 371**
(Conspiracy to Commit Bribery)

1.  Beginning by at least June 2018 and continuing through at least February 2019, the exact dates unknown, in the Northern District of Georgia, the defendant, **JAMES HUGHES**, did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with Patrick Shackelford, Patrick Kirkman, and others known and unknown, to commit an offense against the United States, that is **HUGHES** and other inmates at the United States Penitentiary in Atlanta, Georgia, directly and indirectly did corruptly give, offer, and promise something of value to Patrick Shackelford, a public official, with intent to influence any official act personally and to induce Patrick Shackelford to do and omit to do any act in violation of his official duties, in violation of Title 18, United States Code, Section 201(b)(1).

**Background**

At all times relevant to this Information:

2.  The United States Penitentiary in Atlanta, Georgia ("USP Atlanta") was a medium-security federal prison, as the term is used in Title 18, United States Code, Section 1791(d)(4), for male inmates operated by the Federal Bureau of

Prisons ("BOP"). USP Atlanta also has a detention center for pre-trial inmates and a satellite prison camp for minimum-security male inmates.

3. **JAMES HUGHES** was an inmate at USP Atlanta.

4. From approximately October 2005 to present, Patrick Shackelford has served as a correctional officer with the BOP. From approximately January 2011 to present, Patrick Shackelford served as a plumbing supervisor at USP Atlanta.

5. As a plumbing supervisor, Shackelford's responsibilities included, among other things, overseeing a group of inmates that performed plumbing services throughout USP Atlanta. By virtue of his position, Shackelford and the inmates he supervised had access throughout USP Atlanta, including areas that were not currently housing any inmates.

6. **HUGHES** worked under Shackelford's supervision on the plumbing crew. Shackelford would often rely on **HUGHES** to complete his work.

7. Individual-1 was an inmate at USP Atlanta. Individual-1 worked on the plumbing crew with **HUGHES**.

8. Patrick Kirkman was an inmate at USP Atlanta.

9. Mitchell Arms was an inmate at USP Atlanta.

### Manner and Means

10. Beginning in or about June 2018 and continuing until in or about February 2019, Patrick Shackelford facilitated on behalf of inmates, including **JAMES HUGHES**, Patrick Kirkman, and Mitchell Arms, the smuggling of prohibited contraband, including cellular phones, tobacco, and controlled substances, into USP Atlanta.

11. With Shackelford's knowledge and assistance, inmates working under his direction on the plumbing crew, including **HUGHES**, were able to smuggle

2

contraband into USP Atlanta from a visitor's bathroom through "W-ward." During the relevant time, W-ward was used as the suicide watch unit and was often empty of inmates and staff. Shackelford and inmates working for Shackelford on the plumbing crew created a person-sized hole in a wall in W-ward, which led to a voided area between W-ward and a visitor's bathroom. Once in this voided area in W-ward, the inmates under Shackelford's supervision knocked down another wall to have direct access to the visitor's bathroom. Shackelford and the inmates thereafter made a hole under the sink in the bathroom through which the contraband could be passed into USP Atlanta. Shackelford would escort the inmates, including **HUGHES** and Individual-1, to W-ward to pick up the contraband on nearly a weekly basis.

12. The inmates, including **HUGHES**, communicated about the contraband being smuggled into USP Atlanta in a variety of ways, including via text message using cellular phones they unlawfully possessed within USP Atlanta.

13. After the contraband was smuggled into USP Atlanta, Shackelford further facilitated its distribution by knowingly permitting inmates, including **HUGHES** and Individual-1, to store the contraband within the maintenance office, including hiding it in the ceiling above Shackelford's office, as well as permitting inmates who worked on Shackelford's plumbing crew to distribute contraband to others, including Kirkman and Arms, while providing plumbing services on inmate units.

14. Shackelford in part permitted **HUGHES** and Individual-1 to smuggle contraband into USP Atlanta and subsequently distribute it to other inmates because **HUGHES** and Individual-1 would complete his assigned plumbing duties and other work.

3

15. Shackelford received approximately $5,000 as payment from **HUGHES** for facilitating the smuggling of contraband into USP Atlanta. Kirkman was the source of the funds used to pay Shackelford.

16. Shackelford also received pain pills from **HUGHES** to facilitate the smuggling of contraband into USP Atlanta.

**Overt Acts**

17. In order to carry out the conspiracy and to accomplish the objects thereof, **JAMES HUGHES**, Patrick Shackelford, Patrick Kirkman, Mitchell Arms, and known and unknown members of the conspiracy committed various overt acts in the Northern District of Georgia, including, but not limited to, the following:

   a. In or about June 2018, Shackelford, **HUGHES**, and other inmates on the plumbing crew created a person-sized hole in a wall in W-ward, which led to a voided area between W-ward and a visitor's bathroom.

   b. In or about June 2018, Shackelford, **HUGHES**, and other inmates created a hole beneath the sink in a visitor's bathroom in order to bring controlled substances, cellular phones, and other prohibited items into USP Atlanta.

   c. On or about August 3, 2018, Kirkman transferred $1,000 via Cash App to **HUGHES**.

   d. On or about September 3, 2018, Kirkman transferred $1,000 via Cash App to **HUGHES**.

e. In or about October 2018, **HUGHES** provided Shackelford approximately 120 pain pills in return for Shackelford's role in the scheme.

f. On or about October 6, 2018, Kirkman transferred $1,500 via Cash App to **HUGHES**.

g. On or about November 14, 2018, Kirkman transferred $1,000 via Cash App to **HUGHES**.

h. On or about December 4, 2018, Kirkman transferred $1,000 via Cash App to **HUGHES**.

i. In or about January 2019, **HUGHES** provided Shackelford approximately $5,000 cash.

j. On or about January 27, 2019, Kirkman transferred $500 via Cash App to **HUGHES**.

k. On or about February 17, 2019, Arms sent a text message to **HUGHES** describing the contents of a package coming through the visitor's bathroom containing contraband, including methamphetamine.

l. In or about February 2019, **HUGHES** and other co-conspirators caused more than 500 grams of methamphetamine and more than 1 kilogram of marijuana to be brought into USP Atlanta through the visitor's bathroom.

m. On or about February 18, 2019, **HUGHES** and others stored the methamphetamine, marijuana, and cellular phones in the maintenance office, specifically in the ceiling above Shackelford's office in USP Atlanta.

5

All in violation of Title 18, United States Code, Section 371.

## Count Two – 18 U.S.C. § 371
(Conspiracy to Provide Prohibited Objects and Possess Prohibited Objects)

18. The factual allegations in Paragraphs 2 through 9 of this Information are realleged and incorporated as if fully set forth herein.

19. Beginning by at least June 2018 and continuing through at least February 2019, the exact dates unknown, in the Northern District of Georgia, the defendant, **JAMES HUGHES**, did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with Patrick Shackelford, Patrick Kirkman, Mitchell Arms, and others known and unknown, to commit offenses against the United States, that is:

    a. in violation of a statute and a rule and order issued under a statute, to provide to inmates of United States Penitentiary-Atlanta prohibited objects, namely methamphetamine, marijuana, and cellular phones, and attempt to do so; in violation of Title 18, United States Code, Section 1791(a)(1); and

    b. to possess, obtain, and attempt to obtain prohibited objects, namely methamphetamine, marijuana, and cellular phones, while being an inmate of United States Penitentiary-Atlanta, in violation of Title 18, United States Code, Section 1792(a)(2).

### Manner and Means

20. The factual allegations in Paragraphs 10 through 16 of this Information are realleged and incorporated as if fully set forth herein.

### Overt Acts

21. The over acts alleged in Paragraph 17(a) through Paragraph 17(m) of this Information are realleged and incorporated as if fully set forth herein.

### Forfeiture

22. Upon conviction of the offense allege in Counts One and Two of this Information, the defendant, **JAMES HUGHES**, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real or personal, constituting and derived from proceeds traceable to the offense, including but not limited to the following:

    a. MONEY JUDGMENT: A sum of money in United States currency equal to the amount of proceeds the defendant obtained as a result of the offense for which the defendant is convicted.

23. If, as a result of any act or omission of the defendant, any property subject to forfeiture:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek

7

forfeiture of any other property of the defendant up to the value of the forfeitable property.


RYAN K. BUCHANAN
 *United States Attorney*


ALEX R. SISTLA
 *Assistant United States Attorney*
Georgia Bar No. 845602

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181